UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YUSUPHA TOURAY,

    Plaintiff,

    v.

GLACIER FISH COMPANY, LTD., *et al.*

    Defendants.

Case No. C05-1388L

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant Glacier Fish Co., Ltd.[1] ("Glacier"). (Dkt. #9). Glacier argues that it entered into a binding oral settlement agreement with plaintiff Yusupha Touray, its former employee, and that agreement bars this lawsuit.

For the reasons set forth below, the Court denies Glacier's motion for summary judgment.

## II. DISCUSSION

**A.    Background Facts.**

---

[1] The other defendant is the vessel the PACIFIC GLACIER, which was sued *in rem* and has not appeared in this action.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 1

1 Plaintiff worked for Glacier aboard the PACIFIC GLACIER. Plaintiff was assigned to
2 work in the frozen fish hold, and worked sixteen hours a day with breaks, seven days a week.
3 The boxes of fish weighed fifty pounds or more. On June 18, 2003, plaintiff informed the
4 vessel's medical officer that he was experiencing bilateral knee pain. Plaintiff's treating
5 physician, Dr. Yi, stated in his initial report that plaintiff's condition developed while he was
6 "carrying fifty pound boxes going up and down stairs repetitively." Declaration of Mike
7 Luenella ("Luenella Decl."), Ex. 4. Dr. Yi stated that the statement was based on what plaintiff
8 told him. Later, plaintiff clarified that the boxes of frozen fish were moved down a conveyor,
9 and he "had to pick them off the conveyor and stock them which could be from a few feet of
10 walking distance to 30 feet or more." Id. at ¶ 14, Ex. 11.

Dr. Yi released plaintiff to work without restrictions on August 14, 2003. Luenella Decl.
at ¶ 8, Ex. 5. Plaintiff returned to work for Glacier for 11 days in February 2004. During that
time, he was not assigned to work in the freezer hold. Instead, he was grading fish eggs,
standing up for approximately fourteen and a half hours a day. Plaintiff ceased working for
Glacier after he complained again to the vessel's medical officer of bilateral knee pain.

After plaintiff underwent arthroscopic surgery, Dr. Yi stated that plaintiff was "doing
much better" and that "[h]e was put at maximum medical improvement on August 16, 2004,"
with follow-up "as needed." Id. at Ex. 9. Plaintiff was released to work with various
restrictions. Id. Glacier subsequently ceased maintenance and cure payments. On November
22, 2004, Dr. Yi stated,

> [I]t is very difficult to say exactly what percentage of his pathologies found in both knees are due to a pre-existing condition versus working condition. I would not at all be surprised if his knee conditions were due to some degree of congenital factors/pre-existing conditions. At the same time, I cannot exclude with certainty that working conditions, no matter how severe or mild it was, did not contribute to his current knee problems.

Luenella Decl, Ex. 12.

On October 28, 204, Glacier sent plaintiff a check for $2,500 as an advance on a future
settlement. Luenella Decl., Ex. 1 at p. 7. Plaintiff accepted that payment and applied it towards

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 2

1  a plumbing program, which he subsequently completed.  The parties dispute what occurred next.
2  Glacier states that plaintiff repeatedly sought a settlement, and the parties orally agreed to settle
3  the matter for $17,500.  Plaintiff states that Glacier "was pushing to settle this claim."  Sworn
4  Statement of Yusupha Touray at p. 7.  On February 15, 2005, Glacier, through its insurer, sent
5  to plaintiff a letter stating:

> As discussed via numerous telephone calls yesterday and to memorialize your acceptance of $17,500 (new money) in settling your claim, we have enclosed both the RIGHTS OF SEAMEN and the RECEIPT AND RELEASE documents that will need to be read, dated and signed before a notary and two witnesses.
>
> Upon receiving this letter, please contact the undersigned by calling our toll free number . . . .  We will need to review the terms and conditions of the settlement documents prior to your executing them.  Once signed, you will then need to return the original documents to our office. . . .

Luenella Decl., Ex. 13.  Plaintiff subsequently consulted an attorney and chose not to sign the documents.  Glacier never made the $17,500 payment.

On August 10, 2005, plaintiff filed this action asserting claims for negligence under the Jones Act, unseaworthiness, maintenance and cure, and attorney's fees.  Glacier argues that it is not responsible for plaintiff's degenerative knee condition, and the issue is moot because the parties agreed to settle the claim.

**B.    Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.    Existence of an Agreement to Settle.**

Glacier alleges that plaintiff's claims should be dismissed because the parties entered into

a binding settlement agreement. Plaintiff concedes that oral contracts to settle seamen's claims are binding. The Court therefore considers whether the parties had a valid oral contract to settle plaintiff's claims.

Oral settlement agreements are enforceable "as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." Sea-Land Serv., Inc. v. Sellan, 64 F. Supp.2d 1255, 1261 (S.D. Fla. 1999) ("Unsigned agreements are held enforceable where the parties have a meeting of the minds on the essential terms of their agreement").[2] According to plaintiff's version of events, which the Court assumes is true for purposes of this motion, he never agreed to settle his claims for the amount offered. Glacier argues that plaintiff's assertion that he did not accept the settlement offer is not credible in light of several factors, including his acceptance of the $2,500 advance. The advance payment, however, was made several months before the alleged oral agreement was formed, and, based on plaintiff's version of the facts, is merely evidence of intent to explore settlement. Glacier also notes that it would not have forwarded the settlement documents to plaintiff absent an agreement to settle. The forwarding of the settlement papers, however, does not necessarily reflect a *mutual* intent to settle or agreement as to the settlement amount. Regardless, the Court will not make a credibility determination in ruling on the motion for summary judgment.

Furthermore, plaintiff had not seen the two documents Glacier sent to him – the "rights of seamen" and the "receipt and release" – when the parties allegedly reached their oral agreement. Once he read them, he refused to sign them. Both the amount of consideration and the signed release were material terms of the agreement. Under plaintiff's version of events, there was no meeting of the minds as to either term. Finally, Glacier never tendered and plaintiff never

---

[2] "The enforceability of a seaman's release and settlement agreement is governed by maritime law" rather than state contract law. Sea-Land Serv., Inc., 64 F. Supp.2d at 1260 (citing Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239 (1942)).

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 4

1  accepted any consideration under the agreement.[3]  Therefore, genuine issues of fact remain
2  regarding whether the parties formed an oral agreement to settle.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES Glacier's motion for summary judgment (Dkt. #9).

DATED this 14th day of December, 2005.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge

---

[3] In contrast, in <u>Sea-Land Serv., Inc.</u>, the court found at trial that a valid agreement existed even though the seaman never signed the settlement agreement because he discussed the settlement and release with defendant in person, he "executed" and returned the agreement (including having it notarized and witnessed), he signed the release, and he accepted the payment made pursuant to the agreement. 64 F. Supp.2d at 1258-59.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 5